**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 26-20128-CR-BECERRA

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

WILNER RENAUD,

    *Defendant.*

_____/

## MOTION TO DISMISS COUNT 5

Wilner Renaud, through unsigned counsel, moves to dismiss count 5 of the indictment.  Count 5 charges him with violating 18 U.S.C. § 611 by unlawfully voting in a federal election as a noncitizen.  But the States alone can establish the qualifications of electors for federal elections; Congress can regulate only the time, place, and manner of elections.  Because regulating voter qualifications goes far beyond the scope of time, place, and manner regulations and thus exceeds Congress' enumerated powers, § 611 is facially unconstitutional.

### I.      Relevant factual and procedural background.

The relevant facts are straightforward. The government alleges that on November 8, 2022, Mr. Renaud voted in the 2022 congressional election. The government further alleges that Mr. Renaud was not a U.S. citizen when he voted. Thus, on March 31, 2026, the government charged him with unlawfully voting as a noncitizen, in violation of 18 U.S.C. § 611.

1

**II.   Because Congress is not authorized to establish voter eligibility, § 611 exceeds Article I's enumerated powers.**

The starting point is an elementary first principle: "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Bond v. United States*, 572 U.S. 844, 854 (2014).  Congress lacks a police power—the "broad authority to enact legislation for the public good"— and "can exercise only the powers granted to it." *Id.* (citation omitted).  It can enact only those laws "necessary and proper for carrying into Execution" its enumerated powers, *id.* (quoting U.S. CONST., art. I, § 8, cl. 18), and a crime committed within a State "cannot be made an offence against the United States, unless it [has] some relation to the execution of a power of Congress," *id.* (quoting *United States v. Fox*, 95 U.S. 670, 672 (1878)).  In short, Congress' criminal laws must be grounded in an enumerated power.

What part of the Constitution authorizes Congress to exclude certain classes of people from the franchise?  No part.  No enumerated power in the Constitution or its Amendments allows Congress to establish voter qualifications.  That power was retained by the States when the Founders "split the atom of sovereignty." *See Gamble v. United States*, 587 U.S. 678, 688 (2019) (citation and quotation omitted).

This motion will proceed by analyzing every provision of the Constitution related to voting and will show why none of them authorize § 611.  Those provisions can be divided into three categories: 1) the Voter Qualification Clauses; 2) The Suffrage Amendments enacted following the Civil War; and 3) the Elections Clause.

As to the Voter Qualification Clauses, they establish that a person eligible to

vote in state legislative elections is eligible to vote in federal elections. These provisions do not authorize Congress to dictate voter qualification to the States; to the contrary, they expressly and unequivocally reserve that power to the States. Next, as to the Suffrage Amendments, they prohibit the States from denying the right to vote on the basis of race, sex, a poll tax, or age. These provisions limit the power of the States to establish voter qualifications, but they do not grant Congress an affirmative power to establish its own qualifications. And lastly, as to the Elections Clause, it authorizes Congress to regulate the time, place, and manner of elections. This clause lets Congress regulate the procedure of elections—when, where, and how voting can occur—but it does not let Congress dictate the *substance* of elections—who can vote. Construing the Elections Clause, the Supreme Court has spoken clearly on this point: "nothing" in the Constitution "lends itself to the view that voting qualifications in federal elections are to be set by Congress," or that setting voter qualifications is otherwise a "power to be conferred upon the national government." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 16–17 (2013) (internal citation and quotation omitted).

Because no enumerated power in the Constitution grants Congress the authority to set voting qualifications, § 611 exceeds Congress' authority and intrudes on a power reserved to the States. The constitutionally-infirm indictment must be dismissed.

3

A.      *The Constitution's Federal Voter Qualification Clauses do not authorize Congress to establish voter qualifications.*

Although it may come as a surprise to some, the original Constitution does not grant an affirmative right to vote. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 n.78 (1973) ("[T]he right to vote, per se, is not a constitutionally protected right[.]"). Nor do any of the amendments in the Bill of Rights pertain to suffrage. *See* U.S. CONST. amends. I–X.  But the Framers did not entirely neglect the issue of suffrage.

Rather, the Constitution contains two Voter Qualification Clauses. Specifically, Article I provides that in elections for the U.S. House of Representatives, "the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. CONST. art. I, § 2, cl. 1.  The Seventeenth Amendment later applied the same requirement to U.S. Senate elections. U.S. CONST. amend. XVII. These constitutional provisions offer a *limited* right to vote: anyone eligible to participate in a state legislative election must also be allowed to participate in that state's federal elections.  *See United States v. Classic*, 313 U.S. 299, 314–15, 325 (1941) (holding that under Article I's Voter Qualification Clause, qualified voters have a constitutional right to have their votes counted in federal primary elections for the U.S. House).  By tying federal suffrage to state suffrage, the Framers provided *who* could vote in federal elections—without dictating voter qualifications to the States.

For almost two centuries following the Founding, the task of determining voter qualifications fell exclusively to the States.  *See* Jamin B. Raskin, *Legal*

*Aliens, Local Citizens: The Historical, Constitutional and Theoretical Meanings of Alien Suffrage*, 141 U. Pa. L. Rev. 1391, 1399–1417 (1993).  Congress' enactment of § 611 in 1996, dictating voter qualifications to the States, is a stark deviation from this tradition.  And during the many years when the States solely determined voter qualifications, it is notable that they did not always tie the franchise to citizenship.  Indeed, before the Revolution, the colonies welcomed property-owning, Christian white males to vote regardless of their citizenship.  For example, in the 1700s French Huguenots could vote in the colony of South Carolina, and Germans voted and were elected to office in colonial Pennsylvania.  *See id.* at 1399–1400.

After the Founding, the practice of granting noncitizens the franchise endured.  Early state laws often enfranchised qualified "inhabitants" of a state as opposed to "citizens."  Gerald M. Rosberg, *Aliens and Equal Protection: Why Not the Right to Vote?*, 75 Mich. L. Rev. 1092, 1095–97 (1977).  Some states, like Virginia and Vermont, explicitly allowed noncitizens to vote and Pennsylvania granted suffrage to noncitizens who lived there for at least two years.  *See* Raskin, 141 U. Pa. L. Rev. at 1399.  The practice was so prevalent that even the Supreme Court recognized the power of the States to let noncitizens vote: "citizenship has not in all cases been made a condition precedent to the enjoyment of the right of suffrage."  *Minor v. Happersett*, 88 U.S. 162, 177 (1874).

In sum, voter qualifications are prescribed by the States.  *See* U.S. CONST. art. I, § 2, cl. 1; U.S. CONST. amend. XVII.  The Voter Qualification Clauses grant the States the *exclusive* power to determine voter qualifications.  *See Inter Tribal*

*Council,* 570 U.S. at 16–17 (explaining that the Voter Qualification Clauses "explicitly" regulate voter qualifications and "clear[ly]" state what Congress "cannot control" (citation and quotation omitted)).

B.   *The Suffrage Amendments restrain the States' power to establish voter qualifications, but they do not grant the federal government the affirmative power to establish qualifications.*

Next are the Constitution's restraints on the power of the States to set voter qualifications.   Following the Civil War, several amendments were enacted to restrict the power of the States to discriminatorily limit voter eligibility.   As the following will show, these provisions restrain State power, but they do not grant the federal government an affirmative power to establish voter qualifications.

Various amendments foreclose the States from disqualifying voters on certain enumerated and impermissible grounds.   Specifically, the Fourteenth Amendment, prohibiting States from denying to any person "the equal protection of the laws," U.S. CONST. amend. XIV, § 1, has been construed to bar the States from imposing qualifications that "invidiously discriminate," *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666 (1966).   Likewise, the Fifteenth Amendment ("race, color, or previous condition of servitude"), the Nineteenth Amendment (sex), the Twenty-Fourth Amendment ("failure to pay any poll tax or other tax"), and the Twenty-Sixth Amendment (voter age) all prohibit the States from restricting voter qualifications on their specified bases.

These amendments each contain an Enforcement Clause, permitting Congress to enforce them through legislation.   But these clauses are limited to

enforcement through "remedial" action rather than permitting substantive change to the law. *See South Carolina v. Katzenbach*, 383 U.S. 301, 326 (1966) ("Congress has full *remedial* powers to effectuate [a] constitutional prohibition[.]" (emphasis added)); *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997) (explaining that the originally proposed Enforcement Clause "gave Congress too much legislative power at the expense of the existing constitutional structure," resulting in Congress adopting a more limited-scope provision). Thus, Congress' power under the Enforcement Clauses "is limited to adopting measures to enforce the guarantees of the [respective] Amendment," and grants "no power to restrict, abrogate, or dilute these [constitutional] guarantees." *Katzenbach v. Morgan*, 384 U.S. 641, 651 n.10 (1966).

In short, the Suffrage Amendments do not give Congress the authority to bar a noncitizen from voting. Various post-Civil War amendments authorize Congress to pass laws limiting the States' ability to restrict the franchise for discriminatory reasons, yet these statutes do not independently authorize Congress to set or establish voter qualifications. Nor can it be said that § 611 is authorized by the Enforcement Clauses in any of these amendments; Congress unilaterally prohibiting noncitizens from voting has nothing to do with ensuring that the States do not impermissibly disenfranchise people on the basis of race, sex, the inability to pay a poll tax, or age. *See Flores*, 521 U.S. at 520 (explaining that Congress' power to legislate pursuant to the Fourteenth Amendment's Enforcement Clause must be congruent to the constitutional injury to be remedied).

7

C. *The Elections Clause does not let Congress establish voter qualifications.*

The final candidate that fails to authorize § 611 is the Elections Clause. It provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations[.]" U.S. CONST. art. I, § 4, cl. 1. The plain text of the clause, the Supreme Court's precedent construing it, and the structure of the Constitution all point to the same conclusion: the Elections Clause does not authorize Congress to establish voter qualifications.

The starting point is the plain text of the Elections Clause. *See, e.g., N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 20 (2022) (explaining that a "textual analysis" is the springboard to determine the "normal and ordinary" meaning of a constitutional provision (citation omitted)). By its plain terms, the clause allows Congress to make or alter regulations about the "times" of elections (when they will be held); the "places" of elections (where they will be held); and the "manner" of elections (how they will be held). The ordinary meaning of those clear and straightforward terms shows that the Elections Clause grants Congress a procedural power to regulate *how* elections are conducted, without granting it the substantive power to decide *who* can vote.

And this is consistent with how the Supreme Court has interpreted the clause. The Court has spoken clearly: "the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them." *Arizona v.*

8

*Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 16 (2013) (emphasis in original). Given the unambiguous text of the time-place-and-manner regulation, "[p]rescribing voting qualifications . . . 'forms no part of the power to be conferred upon the national government' by the Elections Clause, which is 'expressly restricted to the regulation of the *times,* the *places,* and the *manner* of elections.'" *Id.* (quoting The Federalist No. 60, at 371 (A. Hamilton) (emphasis in original); *id.*, No. 52, at 326 (J. Madison)); *see also* 2 Records of the Federal Convention 203 (Farrand ed. 1911) ("[T]he right of suffrage is certainly one of the fundamental articles of republican Government, and ought not to be left to be regulated by" Congress).

The text's ordinary meaning is buttressed by the Constitution's structure. A key interpretative principle is that expressing one thing implies the exclusion of unmentioned things. *Bittner v. United States*, 598 U.S. 85, 94 (2023) (explaining the *expressio unius est exclusio alterius* canon). This doctrine applies to Constitutional interpretation. *See Powell v. McCormack*, 395 U.S. 486 (1969) (concluding that because the Constitution expressly lists qualifications for U.S. Representatives, the House cannot add others). And it resolves who is the sole entity empowered to determine voter qualifications: the States.

"The Constitution prescribes a straightforward rule for the composition of the federal electorate," *Inter Tribal Council*, 570 U.S. at 16; as discussed in Part IIA, the Voter Qualification Clauses in Article I and the Seventeenth Amendment tie "the federal franchise to the state franchise," *id.* at 17. Because these clauses

9

expressly regulate voter qualifications, they preclude reading the Elections Clause to cover qualifications: "One cannot read the Elections Clause as treating implicitly what these other constitutional provisions regulate explicitly." *Id.* at 16; *see also Oregon v. Mitchell*, 400 U.S. 112, 210 (1970) (noting that Justice Harlan had "persuasively demonstrated that the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections."); *see also id.* ("It is difficult to see how words could be clearer in stating what Congress can control and what it cannot control.  Surely nothing in these provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress.") (Harlan, J., concurring in part and dissenting in part); *id.* at 288 ("It is plain, in short, that when the Framers meant qualifications, they said 'qualifications.'  That word does not appear in [the Elections Clause].") (Stewart, J., concurring in part and dissenting in part).

Put simply, the "Framers intended the Elections Clause to grant" the States and Congress the "authority to create procedural regulations[.]" *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832 (1995); *id.* at 833–34 ("[T]he Framers understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power . . . to evade important constitutional restraints.").  The express terms of the Voter Qualification Clauses in Article I and the Seventeenth Amendment empower the States to set the qualifications of federal voting, and that express grant of power precludes reading the Elections Clause to contain an implicit grant of power to Congress. Because the Elections Clause gives

10

Congress the authority to regulate only the when, where, and how of voting, it does not authorize § 611's restriction on who can vote.

### III.   Conclusion

Pursuant to Section II, Article IV of the Florida Constitution, only citizens may vote in Florida elections. That is a policy choice the State is free, but not compelled, to make.  *See Minor*, 88 U.S. at 177.  Because Florida has the sole power to set voter qualifications, it also has the sole power to decide whether to prosecute Mr. Renaud.  *See* FLA. CONST. art. IV, § 2.  But nothing in the Constitution permits Congress to set nationwide voter qualifications and punish those in breach of the new bar it has set.  Rather, prescribing voting qualifications "forms no part of the power to be conferred upon the national government by the Elections Clause."  *Inter Tribal Council*, 570 U.S. at 16 (citation and quotation omitted).  Because § 611 is unauthorized by the Constitution and usurps powers granted exclusively to the States, the statute is facially unconstitutional.  Count 5 must be dismissed.

Respectfully Submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

By: */s/ Evan L. Kuhl*
Evan L. Kuhl
Assistant Federal Public Defender
Florida Bar No. 1025143
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000
evan_kuhl@fd.org

11

## CERTIFICATE OF CONFERRAL

The undersigned conferred with AUSA Jeffrey Pierce prior to filing this motion. The government opposes the relief sought herein.

*/s/ Evan L. Kuhl*

## CERTIFICATE OF SERVICE

I HEREBY certify that on **May 12, 2026**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Evan L. Kuhl*
Evan L. Kuhl

12