UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  26-CR-20128-JB

UNITED STATES OF AMERICA

v.

WILNER RENAUD,

     Defendant.

                                        /

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT 2

This Court should deny Defendant Wilner Renaud's ("the Defendant") Motion to Dismiss Count 2 as "facially unconstitutional."  Title 18 U.S.C. § 611 does not exceed Article I's enumerated powers to establish voter eligibility because the federal government has authority over elections, including guarding the safety and integrity of federal elections.  Additionally, Section 611 draws its constitutional authority from Congress' plenary power over immigration and naturalization under Article I, § 8, cl. 4, supplemented by the Necessary and Proper Clause.

### BACKGROUND

The Defendant is not a citizen or national of the United States, rather he is a citizen and national of Haiti.  The Defendant entered the United States on October 3, 1993.  He later married a United States citizen, became a Conditional Resident, but failed to become a naturalized United States citizen.  Records obtained from the Miami-Dade County Supervisor of Elections Office show that the Defendant not only

completed four voter registration forms, in which he falsely claimed to be a United States citizen, but he also voted in the 2022 General Election. On March 31, 2026, the Grand Jury indicted the Defendant for four counts of making a false claim of citizenship in order to vote, in violation of 18 U.S.C. § 1015(f), and one count of voting by alien, in violation of 18 U.S.C. § 611. Defendant filed the instant motion arguing that 18 U.S.C. § 611 is unconstitutional.

## ARGUMENT

### I.  Congress Has Authority to Safeguard the Integrity of Federal Elections

Article I, Section 4, cl. 1, of the United States Constitution, known as the Elections Clause, states, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of [choosing] Senators." While the United States Constitution charges the States with the primary responsibility for regulating federal elections, it also provides that the federal government play a significant role in overseeing such elections due to its "general supervisory power over the whole subject." *See Smily v. Holm*, 285 U.S.C. 355, 266-67 (1932). For instance, "Congress may supplement … state regulations of the state law or provide independent sanctions," *see id.* at 367, or Congress may use the power created by the Framers to "by Law make or alter such regulations" to avoid any abuse of power by the States. *United States Term Limits v. Thronton*, 514 U.S. 779, 808 (1995). Even when a power belongs to the States, such as appointing electors in a Presidential election, the Supreme Court has held that

Congress nonetheless has the constitutional authority to protect the integrity of such elections. *See Burroughs v. United States*, 290 U.S. 534, 545 (1934) (stating "[t]he importance of [the presidential] election and the vital character of its relationship to and effect upon the welfare and safety of the whole people cannot be too strongly stated" and "Congress, undoubtedly, possess that power, as it possesses every other power essential to preserve the departments and institutions of the general government from impairment or destruction[.]").

Congress' power over federal elections was further acknowledged in *Oregon v. Mitchell*, 400 U.S. 112 (1970). In *Oregon v. Mitchell*, the Supreme Court held that while Congress had the power to enact the amendments that changed the voting age for federal elections from 21 to 18, Congress could not do the same for state and local elections. *Id*. Even though the justices disagreed on which specific constitutional provision supplied Congress with the authority to regulate federal elections, a majority at least agreed that when it came to federal elections, Congress could dictate certain voter eligibility restrictions to the States[1]. In his opinion, Justice Black wrote that "[a]ny doubt about the powers of Congress to regulate congressional elections, including the age *and other qualifications of the voters*, should be dispelled by the opinion of this Court in *Smily v. Holm*, 258 U.S. 355 (1932)." *Mitchell*, 400 U.S. at 122 (emphasis added). Justice Black further added, "the Constitution allotted to the

---

[1] Justices Douglas, Brennan, White, and Marshall would have relied on the Equal Protection Clause of the Fourteenth Amendment. *See* 400 U.S. at 144 (opinion o f Douglas, J.); 400 U.S. at 231 (joint opinion of Brennan, Whitem, and Marshall, JJ.). Justice Black relied on the Elections Clause and the Necessary and Proper Clause. *See* 400 U.S.at 119-25. As for the residency requirements only, Chief Justice Burger and Justices Stewart and Blackman would have relied on the Privileges or Immunities Clause and the Necessary and Proper Clause. *See* U.S. 400 at 285-86 (opinion of Stewart, J.).

States the power to make laws regarding national elections, but provided that if Congress became dissatisfied with the state laws, Congress could alter them." *Id.* at 123.

Despite the differing opinions, the holding in *Mitchell* remains instructive and thus Congress has exercised its power to regulate voting in federal elections. For example, Title 18, United States Code, Section 611[2], states "it shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner[.]"[3] Section 611 is not the only federal law that prohibits activities that could occur during the voting or registration process to "protect the integrity" of federal elections. *See Burroughs*, 290 U.S. at 545. An alien who makes a false claim of citizenship in order to vote violates Title 18, United States Code, Section 1015(f). Title 52, Section 10307, passed as part of the Voting Rights Act of 1965, criminalizes fraudulent voting and voting repeatedly in the same election. Specifically, Section 10307(c) prohibits, in a federal or mixed election, knowingly or willfully giving false information to register or vote, conspiring with another individual for the purpose of encouraging false registration or unlawful

---

[2] The only constitutional challenge to Title 18, United States Code, Section 611 considered by the Eleventh Circuit occurred in *United States v. Knight*, where the defendant challenged his conviction under § 611 alleging § 611 violated his right to due process because the statute was both overbroad and vague. 490 F.3d 1268, 1270 (11th Cir. 2007). A unanimous panel affirmed the defendant's conviction. *Id.* at 1272.

[3] In keeping with *Mitchell*, there are exceptions noted in Section 611, including when an alien is authorized to vote under a State constitution or by State or local ordinance and voting in conducted independently of a candidate for federal office. As done in the District of Columbia under D.C. Law 24-242, "eligible non-citizen residents" can vote in D.C. local elections.

voting, or paying or accepting payment either for registration or voting. Section 10307(e) prohibits voting more than once in a federal or mixed election. Further, in Title 52, Section 20511(2), passed as part of the National Voter Registration Act of 1993, provides criminal penalties for the fraudulent procurement or submission of voter registration applications and ballots only in an election for federal office.

Defendant asks this Court to rely on the decision in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013), disregard *Mitchell* in its entirety. This viewpoint is too narrow. In *Inter Tribal*, the state of Arizona challenged the National Voter Registration Act of 1993 (NVRA), which required States to use a uniform federal form to register voters for federal elections. *Id.* at 4. The form only required an applicant to affirm by penalty of perjury that they were a United States citizen, while Arizona law required concrete evidence of citizenship. *Id.* The Court held the NVRA preempted Arizona from requiring information beyond the requirements stated in the form. *Id.* at 20. Even though the Court noted, "Arizona is correct that the Elections Clause empowers Congress to regulate how federal elections are held, but not who may vote in them," *see* id. at 16, the Court's ruling showed that federal law can still preempt state procedures for enforcing voter qualifications. The fractured majority in *Mitchell* highlights the alternative grounds in which Congress can regulate voter eligibility in federal elections. *See, e.g. Mitchell*, 400 U.S. 112 at 120 (stating "the power of Congress to make election regulations in national elections is augmented by the Necessary and Proper Clause). The Defendant disregards such alternatives in their entirety and instead asks this Court to make a blanket ruling

that Section 611 is unconstitutional.  This Court should deny the Defendant's argument.

**II.      Section 611 Is Grounded in Congress' Plenary Power Over Immigration and Naturalization Under Article I, Section 8, Cl. 4, Supplemented By The Necessary and Proper Clause.**

Article 1, Section 8, cl 18 of the United States Constitution states, "Congress shall have Power … [t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or any Department or Officer thereof."  Additionally, Article 1, Section 8, cl. 4 grants Congress the power "[t]o establish a uniform Rule of Naturalization," and the United States Supreme Court "has broadly interpreted [Congress'] power to include the authority to regulate not only the conditions of entry and residence of aliens, but also the conduct of aliens in the country."  *Rodriguez v. United States*, 983 F.Supp. 1445, 1454 (S.D. Fla. 1997)(*citing Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 335-37 (1909)).  "[T]he supremacy of the national power in the general field of foreign affairs, including power of immigration, naturalization and deportation, is made clear by the Constitution … by authors of The Federalist in 1787 and has since been given continuous recognition by [the Supreme] Court."  *Hines v. Davidowitz*, 312 U.S. 52 (1941).  Indeed, "the authority of the political branches over immigration matters and aliens is plenary and knows few bounds."  *Jean v. Nelson*, 711 F.2d, 1455 (11th Cir. 1983).

6

Section 611 falls squarely within Congress' plenary power over regulating immigration matters and is not the only example of federal power over the issue.  For example, Title 8, United States Code, Section 1227(a)(6) states "[a]ny alien who has voted in violation of any Federal, State, or local constitutional provision, statute, ordinance, or regulation is deportable."  Also, Title 8, United States Code, Section 1182(a)(10)(D) states "[a]ny alien who has voted in violation of any Federal, State, or local constitutional provision, statute, ordinance, or regulation is inadmissible."  Thus, because Congress has plenary power over immigration, and can make laws that are necessary and proper to execute such power, Section 611 is constitutional.

Courts have held in several cases that Congress has power over aliens in the United States.  In *United States v. Gordon-Nikkar*, the defendant was convicted in the Southern District of Florida on several drug charges.  518 F.2d 972 (5th Cir. 1975).  The defendant appealed his conviction and argued that the exclusion of resident aliens from the petit jury venire violated her right to a fair trial before a fair cross-section of the community.  *Id.* at 975.  The Court noted that "[w]hile resident aliens are entitled to the full protection of this country's laws, until they obtain and maintain citizenship by naturalization they are subject to the plenary authority of Congress' immigration and naturalization powers." *Id.* at 977 (*citing Carlson v. Landon*, 342 U.S. 524 (1952)).  In denying the defendant's appeal, the Court stated that Congress had "the legitimate power to define the extent of resident aliens' rights prior to obtaining citizenship," and may exclude aliens from jury service.  *Id.* at 978.

7

Additionally, in *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976), the United States Supreme Court ruled that Congress is allowed to place conditions on an alien's ability to participate in a federal medical insurance program, highlighting that Congress' broad power over naturalization and immigration allows Congress to "regularly make[] rules that would be unacceptable if applied to citizens."

Another example, in *United States v. Singh*, the defendant challenged Congress' power to prohibit foreign nationals from making contributions *in state and local elections*.  979 F.3d 697, 710 (9th Cir. 2020) (emphasis added).  The Court held that Congress "was within its power when it acted to protect the country's political processes …" and that "a prohibition on campaign donations and contributions by foreign nationals is necessary and proper to the exercise of the immigration and foreign relations powers."  *Id*. at 710.  The Court additionally rejected an argument by the defendant that, under *Oregon v. Mitchell*, *see* 400 U.S. 112, Congress cannot intrude upon state and location elections; however, the Court did not agree, finding *Mitchell* distinguishable because *Mitchell* dealt with "Congress' authority to regulate state elections as they related to *citizens* of the United States."  *Id*. (emphasis added).

Thus, United States has the right to exclude aliens from voting in federal elections and Section 611 is well within that realm of Congress' authority.

## CONCLUSION

WHERERFORE, the United States respectfully requests this Court DENY the

Defendant's Motion to Dismiss Count 2 of the Indictment.


Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: _/s/ Jeffrey M. Pierce_
Jeffrey M. Pierce
Special Assistant United States Attorney
Florida Bar No. 1002549
99 N.E. 4th Street
Miami, Florida 33132
(786) 647-9232
Jeffrey.Pierce@usdoj.gov


## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 25th day of May 2026, the undersigned

electronically filed the foregoing Opposition Response with the Clerk of the Court

using CM/ECF, and that copy of the Opposition Response was forwarded to opposing

counsel.

_/s/ Jeffrey M. Pierce_
Jeffrey M. Pierce
Special Assistant United States Attorney

9