UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-CR-20128- Becerra

UNITED STATES OF AMERICA

v.

WILNER RENAUD,

Defendant.
_____________________________________________/

**DEFENDANT'S PROPOSED JURY INSTRUCTION**

**Defendant**, **Wilner Renaud**, by and through undersigned counsel, respectfully requests that the Court provide the jury instruction set forth herein regarding his affirmative defense of Entrapment by Estoppel to Count 5 of the Indictment, 18 U.S.C. § 611.[1]

**Proposed Instruction: Entrapment by Estoppel**

**Based Upon the Federal Criminal Jury Instructions of the Seventh Circuit[2] and Modified by Counsel**

> The defendant asserts the defense of entrapment by estoppel. The defendant contends that he engaged in the conduct charged against him in Count 5 in reasonable reliance on the Miami-Dade County Office of the Supervisor of Elections' assurance, by way of issuing him a voter information card, that this conduct was lawful.
>
> In Florida, the Division of Elections of the Department of State and a county's Office of the Supervisor of Elections and their officials act with the apparent authority of the United States Government in processing voter registration applications and determinations of voter eligibility for federal elections.

---

[1] Mr. Renaud requests this instruction in light of the Court's recent denial of his Motion to Dismiss Count 5. Mr. Renaud maintains and continues to preserve his position that Count 5 of the Indictment should be dismissed as unconstitutional, and his assertion of an affirmative defense should not be construed as a waiver thereof.

[2] Seventh Circuit Pattern Jury Instruction 6.07.

A defendant who commits an offense in reasonable reliance on such an official assurance does not act knowingly and should be found not guilty.

In order to be found not guilty for this reason, the defendant must prove the following three things are more likely true than not true:

1. An official with the apparent authority of the United States Government over the matter, told the defendant that his conduct would be lawful; and

2. The defendant actually relied on what this official told him in taking this action; and

3. The defendant's reliance on what the official told him was reasonable. In deciding this, you should consider all of the relevant circumstances, including the identity of the government official, what that official said to the defendant, and how closely the defendant followed any instructions the official gave.

**Defense Notes on Instruction**

"The evidence must be reviewed in the light most favorable to the defendant in determining whether a basis for the instruction exists." *United States v. Hedges*, 912 F.2d 1397, 1406 (11th Cir. 1990). "[T]he defendant 'is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir.1986) (quoting *United States v. Young*, 464 F.2d 160, 164 (5th Cir.1972) (emphasis in *Lively*)).

In the Eleventh Circuit, the entrapment by estoppel defense applies when a defendant reasonably relies on a government official's assurance that specified conduct will not violate the law, and it requires an affirmative communication of official approval of the conduct at issue. *United States v. Alvarado*, 808 F.3d 474, 484-85 (11th Cir. 2015). The defense does not require actual authority like the public authority defense does; instead, requiring only that the official has apparent authority. *Id.* at 485. The defendant's reliance on that official's assurance must be

reasonable. *Id.* The Eleventh Circuit has stated that, "[b]ecause the defense of entrapment by estoppel 'rests upon principles of fairness . . . it may be raised even in strict liability offense cases.'" *United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994) (quoting *United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir.1990)).

**A. The Division of Elections of the Department of State and the Miami-Dade County Office of the Supervisor of Elections and its officials act with the apparent authority of the United States Government.**

Under the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511, Congress established a federal framework mandating that states administer voter registration for federal elections through procedures implemented by state and local election officials. See 52 U.S.C. § 20509 ("Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter."). Congress thereby delegated voter-registration functions to state and local officials, including county supervisors of elections, "for the registration of voters in elections for Federal office," 52 U.S.C. § 20506—these officials ultimately serve as agents for the federal government on the federal matter of voter registration.

The Florida Voter Registration Act ("FVRA") was enacted into law in order to implement the NVRA. Fla. Stat. § 97.011 *et. seq.* Under the FVRA, the Secretary of State is named the chief election officer of the state, whose responsibility it is to "[c]oordinate the state's responsibilities under the National Voter Registration Act of 1993." Fla. Stat. § 97.012(7). Furthermore, Florida law provides that each county's supervisor of elections "shall ensure that all voter registration and list maintenance procedures conducted by such supervisor are in compliance with any applicable requirements prescribed by rule of the department through the statewide voter registration system

or prescribed by the Voting Rights Act of 1965, the National Voter Registration Act of 1993, or the Help America Vote Act of 2002." Fla. Stat. § 98.015(10).

The Florida Secretary of State, the Division of Elections under the Department of State, and the Miami-Dade County Office of the Supervisor of Elections together with each entity's agents therefore act with the apparent authority of the United States Government with respect to voter registration matters. *See Keathley v. Holder*, 696 F.3d 644, 646–47 (7th Cir. 2012) ("The power to register someone supposes some authority to ascertain whether legal qualifications have been met, and officials are supposed to inform applicants about the eligibility rules for voting. 42 U.S.C. § 1973gg(a). These officials thus are entitled to speak for the government on that subject.")

**B. The Issuance of a Voter Information Card Was an Assurance of Legality.**

What is more, pursuant to the FVRA, a voter registration application "may be accepted as valid *only after* the department[3] has verified the authenticity. . . of the Florida driver license number . . . provided by the applicant." Fla. Stat. § 97.053(6)(a) (emphasis added). In instances where a completed voter registration application is received but "the records of the Department of Highway Safety and Motor Vehicles indicate that the applicant is not a United States citizen . . ., the applicant must be notified and must provide evidence to the [supervisor of elections] sufficient to verify the authenticity of the applicant's Florida driver license number . . . or, if applicable, must provide a document acceptable as evidence of United States citizenship." *Id.* Indeed, the Supervisor of Elections is <u>mandated</u> to "verify the voter's legal status as a United States citizen using available state and federal governmental sources" where, upon receipt of a voter registration application "the records of the Department of Highway Safety and Motor Vehicles indicate that the applicant is not a United States citizen." Fla. Stat. § 97.053(6)(b).

[3] The FVRA defines "Department" as the "Department of State." Fla. Stat. § 97.021(8).

Accordingly, when the Miami-Dade Supervisor of Elections issued Mr. Renaud a voter information card after he provided his real driver's license, the Supervisor and its agents acted with the apparent authority of the federal government and assured Mr. Renaud that, as of his application, he could legally vote and that his conduct was lawful *See Keathley v. Holder*, 696 F.3d 644, 646–47 (7th Cir. 2012) (finding that that an immigrant subject to removal for alleged voter fraud in violation of 18 U.S.C. § 611 could assert an entrapment by estoppel defense when she applied for her driver's license and was given choice to register to vote by state official under voter-motor law).

Thus, Mr. Renaud respectfully requests that the Court instruct the jury on the affirmative defense of Entrapment by Estoppel.

Respectfully submitted,

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
2 South Biscayne Blvd., Ste. 2530
Miami, Florida 33131
Tel: (305) 400-4260

By: *<u>/s/ Daniel Lawrence Rashbaum</u>*
Daniel Lawrence Rashbaum, Esq.
Florida Bar No. 75084
drashbaum@mrpfirm.com
Samantha Andrea Gonzalez, Esq.
Florida Bar No. 1031254
SGonzalez@mrpfirm.com